BANCO DE PONCE, Plaintiff and Appellant, *v.* MONSERRATE MARCHAND ET AL., Defendants and Appellees.

No. 8217. Argued February 19, 1942.—Decided February 27, 1942.

*Fernando Zapater* for appellant. *R. V. Pérez Marchand* for appel-lees.

MR. JUSTICE TRAVIESO delivered the opinion of the court.

On May 4, 1925, Manuel Pérez Soto and Vicente Pérez Andújar executed ten promissory notes for $1,000 each, payable to the order of Pedro Juan Rosaly and numbered from 1 to 10, to become due respectively on January 31st of each of the years 1926 to 1935. Said notes which were solidary obligations, were indorsed and delivered by Rosaly to Banco de Ponce.

In the complaint filed by the bank against the heirs of Vicente Pérez Andújar, it was alleged that the latter had paid the first six promissory notes with interest thereon, but not the remaining obligations amounting to $4,000 as principal plus $2,536 as interest and costs; that the plaintiff bank had brought an ordinary action to collect the amount of the mortgage against Manuel Pérez Soto and others, and obtained a judgment for $6,536; that upon said judgment being executed, the plaintiff bank was awarded, at public auction, a property belonging to Pérez Soto for $2,000, which amount was applied to the payment of the interest at the rate of 8 per cent due upon promissory notes Nos. 7, 8, and 9; and that the unpaid debt upon the four promissory notes liquidated up to August 31, 1934, was reduced to $4,983.15. The latter sum is sought to be recovered from the defendant heirs.

In opposition to the complaint, the defendant heirs filed a lengthy answer in which it was alleged in substance that, although in the ten promissory notes executed in favor of Rosaly the makers appeared to be bound *in solido,* the real situation was as follows:

By a public deed dated May 4, 1925, Mr. Rosaly, Manager of Banco de Ponce, sold a 93½-acre property to Ma-

nuel Pérez Soto for an agreed price of $10,000. In the deed it was stated that the price was paid by the purchaser at the time of the execution of the instrument by delivering to the vendor the ten promissory notes subscribed by the purchaser and Mr. Pérez Andújar; and as a collateral security the purchaser Manuel Pérez Soto, for himself and as attorney in fact of his wife, had executed on the same day a promissory note payable to bearer, for $10,000, secured by a mortgage on the same property which he had just purchased from Rosaly, and by a lien upon the crops of said property until the obligations were fully paid. It was also agreed in the deed that in the event that any or all of the promissory notes should be paid by Pérez Andújar, the latter or his heirs would be subrogated to all the rights and obligations of Pérez Soto respecting the property involved in the contract. The payments made by Pérez Andújar to the bank were effected in accordance with the terms of said deed. The action to recover the amount of the mortgage securing the promissory note for $10,000 was directed against Manuel Pérez Soto and the heirs of Vicente Pérez Andújar; but the latter were never served with summons or notified. Manuel Pérez Soto confessed judgment and was adjudged to pay $6,536, with costs. Upon said judgment being executed by sale at public auction of the property, the latter was awarded to the bank for the sum of $2,000.

As special defenses, the defendant alleged:

1st. That upon paying to the bank the amount of the first six promissory notes, Vicente Pérez Andújar and his heirs were subrogated to all the rights and obligations of Manuel Pérez Soto respecting the property, its fruits and crops, and the mortgage note which said property secured; and that the plaintiff bank, disregarding defendant's rights, foreclosed the mortgage, caused the mortgaged property to be awarded to itself, and canceled the $10,000 mortgage note which served as collateral security for the 10 uncertified (*quirografarios*) promissory notes.

2d. That the ten uncertified promissory notes had been subscribed by Vicente Pérez Andújar in his capacity as solidary surety of Manuel Pérez Soto, purchaser of the property, a fact which was known and accepted by Banco de Ponce, as it was a party to the deed of sale; and that by foreclosing the mortgage and causing the property to be awarded in its favor without notice to the defendants, the plaintiff bank had deprived the defendants of their right to be subrogated to the rights of Manuel Pérez Soto and to those of the plaintiff bank itself, for which reason the defendants were released from the obligation to make payment, and the debt was totally extinguished.

3rd. That the plaintiff bank had acted wrongfully in failing to deliver to the defendants the mortgage note and the mortgaged property, in failing to render an account of the fruits and products thereof, and in failing to apply the latter to the payment of the claimed indebtedness, in accordance with the stipulations of the deed of May 4, 1925, for which reason the debt has become extinguished, and the plaintiff is precluded from recovering any sum from the defendants.

During the trial, at the close of the plaintiff's evidence, the defendants presented a motion for nonsuit which was denied, and the court rendered judgment dismissing the complaint, with costs but without including attorney's fees. Thereupon the plaintiff took the present appeal. It urges that the lower court erred (1) in confusing a subrogation by total payment with a subrogation by partial payment and in not applying §1167 of the Civil Code (1930 ed.; (2) in failing to apply the doctrine laid down in *Acevedo* v. *Treasurer*, 52 P.R.R. 445, 446, to the present case; and (3) in applying the doctrine stated in *National City Bank* v. *Guarch*, 50 P.R.R. 847.

The sections of the Civil Code (1930 ed.) involved in the present appeal are the following:

"Section 1167.—A creditor to whom a partial payment has been made may exercise his right with regard to the balance, with preference to the person subrogated in his place by virtue of the partial payment of the said credit.

"* * * * * * *

"Section 1738.—By virtue of such payment the surety is subrogated to all the rights which the creditor had against the debtor.

"* * * * * * *

"Section 1751.—The sureties, even when they are joint, shall be released from their obligation whenever by an act of the creditor they can not be subrogated to the rights, mortgages, and privileges of the same."

Let us make a brief summary of the essential facts admitted by the pleadings or established by the evidence in order that we may be able to determine whether or not the lower court erred in the application of the law.

Banco de Ponce, owner of a property recorded in the name of its manager, Mr. Rosaly, sold it to Mr. Pérez Soto for $10,000. The purchaser delivered ten promissory notes for $1,000 each, executed by him and Mr. Pérez Andújar *in solido*, to Mr. Rosaly, who in his turn indorsed them over to the bank. The purchaser, Pérez Soto, delivered to the vendor as collateral security, a promissory note for $10,000, secured by a mortgage on the same property which he had just purchased. The solidary surety, Mr. Pérez Andújar, paid to the bank the amount of the first six promissory notes. Subsequently, the bank foreclosed the mortgage, caused the property which had been mortgaged to secure the promissory note for $10,000 to be awarded to itself for $2,000, sold the property to a third person, and brought the present action against the heirs of the solidary surety to recover a deficiency judgment.

Did the lower court commit the errors assigned by the appellant? This question must be answered in the negative.

In accordance with the express stipulations made by the parties in the fifth clause of the deed of conveyance of the property, upon paying the six promissory notes, Mr. Pérez

Andújar and his heirs were subrogated to the rights and obligations of Mr. Pérez Soto respecting the property, and pursuant to the provisions of §1738 of the Civil Code, *supra,* they were subrogated *pro tanto,* by virtue of such payment, to the rights which the creditor bank had against the debtor, Mr. Pérez Soto.

It is unquestionable that the creditor bank had at all times the right to demand from Mr. Pérez Andújar and his heirs the payment of the total amount due, in which case, once the whole debt was paid, the solidary surety would be subrogated to all the rights which the creditor bank had as against Pérez Soto to collect the mortgage that secured the promissory note serving as collateral security. And it is equally unquestionable, that having received only a partial payment, which gave rise to a partial subrogation, the bank could proceed to collect the balance and to enforce the mortgage security with priority over the person who had been subrogated in its place as to that portion of the credit paid by such person, in accordance with the provisions of §1167. The bank was entitled to foreclose the mortgage, sell the property, and apply the proceeds thereof to the balance of the amount due to it. If any balance remained after the preferred credit of the bank had been paid, such balance must be applied to the payment of the debt owed the solidary surety. However, the bank had no authority to foreclose the mortgage or to attach and sell the property without summoning or in some way serving notice or demand upon the party really interested in the property and in the mortgage. In accordance with the fifth clause of the deed, to which the plaintiff bank was a party, Mr. Pérez Andújar and his heirs, by virtue of the payment of the first six promissory notes, were subrogated to all the rights of the owner of the property and to a part of the right of the creditor, subject to the preference to which we have already referred. Had the bank complied with the requisite of summon-

ing the heirs of Pérez Andújar, thus giving the latter an opportunity to pay the amount due and to be subrogated to the whole collateral security, and also the opportunity to appear at the auction to protect their right to collect their claim after the bank had collected its own, the position which the bank now occupies, as a result of its own conduct, would be different.

It is an admitted fact that the heirs of Pérez Andújar, solidary sureties, were never summoned or cited in the action brought by Banco de Ponce to collect the amount of the mortgage by a sale of the property. The judgment rendered in that action can not in any way bind the said heirs. The bank was entitled to priority over the heirs, but it could not disregard the subordinate rights of the latter. The partial subrogation which by operation of the above-cited sections of the Civil Code took place in favor of the heirs of Pérez Andújar, was nullified by the acts of the creditor bank. And the lower court did not err in holding that, in accordance with the provisions of §1751, *supra*, the solidary surety was released from his obligation.

We agree with the commentators cited by the appellant (Scaevola, vol. 19, p. 1051; Manresa, vol. 8, pp. 446, 447; Laurent, vol. 18, p. 183) that a solidary surety who pays a portion of the debt does not acquire any right against the creditor or concurrently with the latter; and that the creditor has a preferential right to collect the balance of the debt. Let us see what Manresa says, in the cited volume and page, as to the meaning and scope of such preference:

"But the said preference can not be given an exaggerated scope which would hamper the claim of the subrogated creditor or preclude payment to him because the original creditor has not yet been paid or has failed to enforce his rights, for this would be tantamount to placing the new creditor in the power of the original creditor. So that the former will have available a right of action so long as the same is not hindered by the exercise of the one accruing in favo· of the latter, and it is only where the enforcement of a mortgage

security is involved that the right of the original creditor should be accorded the consideration which the preferential character of his mortgage demands.

"Since several successive subrogations may occur, for there is nothing which would militate against the legality of such repeated novations, it may happen that a second or subsequent subrogation be a partial one, and in such a case there will be a like reason for a preference in favor of the rights of the earlier subrogee over those of the person who is to be partially subrogated in his place. Hence, the order of subrogation giving rise to each credit, will determine the preference, which will, of course, be understood in the sense already explained.

"From a comparison between this section and §1210 (1), it will be found that partial subrogation also affords a basis for obtaining a full subrogation. Thus, once a subrogation is effected, the subrogee acquires the status of a creditor; but since the subrogation is only a partial one, his claim is subject to priority in favor of the former creditor as provided in this §1213, and he fulfills the two requisites set forth in §1210 (1), which would enable him, through the payment of the balance, to be fully subrogated, regardless of the circumstances in which such second creditor might have been placed with respect to the credit in question before making the first partial payment on account thereof."

By foreclosing the mortgage, procuring an award of the property in its favor, and selling it to a third person, all this without the intervention or consent of the subrogated creditor, the bank deprived that creditor of his right to obtain a full subrogation through paying the balance of the debt and acquiring for himself the collateral security. The letter from Attorney Rafael V. Pérez Marchand, as representative of the defendant heirs, in which he advised the plaintiff bank that "We think that the shortest way and also the most practical one, is the foreclosure of the mortgage on said property by that bank in order that we and the bank may opportunely consider to what extent we are bound to pay any balance remaining from the original debt and secured by our predecessor in interest" can not be interpreted as a waiver of the right which the heirs of Pérez Andújar had,

as parties interested in the mortgage security, to be heard and to intervene, either as plaintiffs or as defendants, in the action brought by the bank to recover the amount of the mortgage. It seems to have been so understood by the bank, for in the suit to recover on the mortgage, the heirs of Pérez Andújar were included as parties defendant. Yet, as we have already stated, no notice of said complaint was served on them.

In the case of *Acevedo* v. *Treasurer,* 52 P.R.R. 446, 450, the only holding made which might have some bearing on the question involved in the present appeal was, that a creditor has sufficient interest in a promissory note pledged to him as collateral security to support an action by him in his own name to enforce the collection thereof; and that a creditor who holds in pledge, as collateral security, a promissory note secured by mortgage, need not become the absolute owner of the note, or of the mortgage, in order to institute a summary foreclosure proceeding. The lower court did not deny the right of Banco de Ponce, as holder of the promissory note pledged to it as collateral security, to bring an action to recover the amount of the mortgage. What it did hold, correctly in our judgment, was that the foreclosing bank had no right to enforce the security behind the back of the subrogated creditor and in disregard of the rights acquired by the latter; and that as a result of such conduct, the subrogated creditor was released from his obligation with respect to the balance of the debt.

In the case of *National City Bank* v. *Guarch,* 50 P.R.R. 847, the facts which served as a basis for the judgment appealed from were similar to those of the case at bar, with this difference, that there the bank had not extinguished the collateral security but only waived and suspended, for a period of ten years, its rights to declare the debt due and to foreclose the mortgage. We held that "it would be unjust and inequitable to hold that Guarch is subject to the

disadvantages and obligations of a contract executed without his knowledge or consent, but is entitled to the rights and benefits granted in that same contract to the other debtor.'' The situation of the subrogated creditor in the case at bar is much more disadvantageous than that of Guarch in the case cited. Guarch only had to wait ten years in order to be able to enforce his rights as a subrogated creditor. The heirs of Pérez Andújar have nothing to be subrogated to, for the mortgage was extinguished by the original creditor without the knowledge or consent of the subrogated creditor.

The judgment and order appealed from must be affirmed.

Mr. Justice Todd, Jr., did not participate herein.